UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:21-cv-60914

UMG Recordings, Inc.; Capitol Records, LLC;
Universal Music Corp.; Universal Music – Z
Tunes LLC; Universal Musica, Inc.; PolyGram
Publishing, Inc.; Songs of Universal, Inc.; and
Universal Music - MGB NA LLC,

        Plaintiffs,

v.

Vital Pharmaceuticals, Inc. *d/b/a* Bang Energy;
and Jack Owoc, an individual,

        Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs UMG Recordings, Inc.; Capitol Records, LLC; Universal Music Corp.; Universal Music – Z Tunes LLC; Universal Musica, Inc.; PolyGram Publishing, Inc.; Songs of Universal, Inc. and Universal Music - MGB NA LLC (collectively, "Plaintiffs") file this Complaint and Demand for Jury Trial against defendants Vital Pharmaceuticals, Inc. *d/b/a* Bang Energy ("Bang") and its Chief Executive Officer, Jack Owoc ("Owoc") (together, "Bang Defendants").

**INTRODUCTION**

1. Plaintiffs are among the world's leading record labels and music publishers. They are engaged in the business of acquiring, administering, licensing, exploiting and otherwise monetizing a catalog of copyrights containing musical compositions and sound recordings. Plaintiffs' catalogs of copyrighted musical works are extremely valuable and encompass works composed or performed by an array of world-renowned songwriters and artists, including Ariana Grande, Billie Eilish, Drake, Diana Ross, Justin Timberlake, The Jackson 5, Justin Bieber, J. Balvin,

Nicki Minaj, and Post Malone.

2. Bang is a brand of energy drinks and sports nutrition supplements. It touts itself as "the nation's leading energy and lifestyle brand." Bang is the third highest-selling energy drink in the United States and sells its products in more than 37 countries. Owoc is Bang's Chief Executive Officer.

3. The Bang Defendants actively market Bang and its products on social media, including TikTok, the wildly popular platform for making and sharing short-form videos often set to music. Bang's TikTok account (username @bangenergy) has more than 1.3 million followers and 4.1 million likes; and Owoc's TikTok account (username @bangenergy.ceo) has 709,300 followers and 1.9 million likes. Bang's hashtag (#bangenergy) has garnered over 12.0 billion TikTok views, while #bangenergydrink has stirred another 31.9 million views.

4. The Bang Defendants brag loudly about the billions of views that their videos have received on TikTok, but have been silent since Plaintiffs demanded an explanation for the unauthorized use of Plaintiffs' copyrighted musical works in more than 100 videos posted on the Bang and Owoc TikTok accounts (together, the "Bang TikTok Accounts"). The Bang TikTok Accounts make prominent use of Plaintiffs' famous copyrighted musical works, resulting in videos with the Bang Energy name choreographed to Plaintiffs' copyrighted music. For example, here are "screen shots" of the four videos posted to Bang TikTok Accounts using Plaintiffs' copyrighted musical works:



5. When confronted by Plaintiffs regarding their unlicensed use of music, the Bang Defendants feebly proclaimed: "Our understanding is that TikTok provides use of these songs, and

others, with a license to all of its members." After being notified that TikTok provides no such license, the Bang Defendants nonetheless continued to use Plaintiffs' copyrighted musical works in their existing videos and to continue making new infringing videos.

6. The Bang Defendants' conduct has caused and continues to cause substantial and irreparable harm to Plaintiffs, while enriching the Bang Defendants at Plaintiffs' expense and to the detriment of the copyrighted musical works owned and/or controlled by Plaintiffs. By this lawsuit, Plaintiffs seek to stop the infringement and to obtain compensation for the Bang Defendants' massive, willful, and deliberate campaign of copyright infringement.

## JURISDICTION AND VENUE

7. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

8. The Court has jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq.*, 28 U.S.C. §§ 1331, 1338, and 1367.

9. The Court has personal jurisdiction over the Bang Defendants because, among other things: (a) Bang is a Florida corporation with its headquarters and principal address located in the State of Florida; (b) Owoc is domiciled in the State of Florida; (c) the Bang Defendants are doing and have been doing business continuously in the State of Florida; (d) a substantial part of the wrongful acts committed by the Bang Defendants occurred in the State of Florida, including by reproducing, distributing, preparing derivative works based upon, and publicly performing Plaintiffs' copyrighted works within the State of Florida; and (e) the Bang Defendants' conduct causes injury to, and is directed at, Plaintiffs and their intellectual property in the State of Florida.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Bang Defendants "reside" in this District and a substantial part of the events giving rise to Plaintiffs'

claims occurred in this District.  Also, Plaintiffs have been injured in this District as a result of the Bang Defendants' infringing conduct.

## THE PARTIES

11. Plaintiff UMG Recordings, Inc. ("UMG Recordings") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the County of Los Angeles, California.

12. Plaintiff Capitol Records, LLC ("Capitol") is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in the County of Los Angeles, California.

13. Plaintiffs UMG Recordings and Capitol collectively are referred to herein as the "Record Company Plaintiffs."  The Record Company Plaintiffs are engaged in the business of producing sound recordings and distributing, selling, and/or licensing the reproduction, distribution, sale, preparation of derivative works based upon, and performance of their sound recordings in phonorecords (as defined in 17 U.S.C. § 101), in audiovisual works, and for streaming (*i.e.*, performing) and downloading over the Internet and through other mediums.  The Record Company Plaintiffs invest substantial money, time, effort, and creative talent in discovering and developing recording artists, and in creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists and their unique and valuable sound recordings.

14. The Record Company Plaintiffs own copyrights and/or exclusive rights in and to many of the most popular sound recordings in the world – including, by way of example, current TikTok favorites "7 Rings" by Ariana Grande, "Rockstar" by DaBaby and Roddy Ricch, and "Promiscuous" by Nelly Furtado – as well as the other recordings identified on the attached **Exhibit**

**1** (the "Recordings").  The Record Company Plaintiffs: (a) own copyrights in the Recordings and possess certificates of copyright registration in the Recordings; (b) have, as it relates to some works, applied for certificates of copyright registration in the Recordings but have not yet received registrations due to the current backlog at the U.S. Copyright Office;[1] and (c) have the rights to pursue this claim for works originating outside of the United States under the Berne Convention.[2]

15.     As the owner of copyrights in the Recordings, the Record Company Plaintiffs possess the exclusive rights to, among other things, reproduce the Recordings in copies or phonorecords, to prepare derivative works based upon the Recordings, to distribute copies or phonorecords of the Recordings to the public, to perform the Recordings publicly by means of a digital audio transmission and to license these exclusive rights, including over the Internet.

16.     Plaintiff Universal Music Corp. ("Universal Music") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the County of Los Angeles, California.

17.     Plaintiff Universal Music – Z Tunes LLC *d/b/a* Universal Music – Z Songs ("Z Tunes") is a limited liability company duly organized and existing under the laws of the State of New York, with its principal place of business in the County of Los Angeles, California.

18.     Plaintiff Universal Musica, Inc. *d/b/a* Universal-Musica Unica ("Musica Unica") is a corporation duly organized and existing under the laws of the State of Florida, with its principal place of business in the County of Los Angeles, California.

---

[1] Plaintiffs will amend the Complaint after receiving additional certificates of copyright registration.

[2] With respect to one work, "I Want You Back" by The Jackson 5, Plaintiff does not possess a traditional registration, but this work is protected under the Music Modernization Act.

19. Plaintiff PolyGram Publishing, Inc. ("PolyGram") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the County of Los Angeles, California.

20. Plaintiff Songs of Universal, Inc. ("Songs of Universal") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in the County of Los Angeles, California.

21. Plaintiff Universal Music - MGB NA LLC ("MGB NA") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in the County of Los Angeles, California.

22. Plaintiff Universal Music, Z Tunes, Musica Unica, PolyGram, Songs of Universal, and MGB NA collectively are referred to herein as the "Music Publisher Plaintiffs." The Music Publisher Plaintiffs are music publishers engaged in the business of acquiring, owning, publishing, administering, licensing, and otherwise exploiting copyrights in musical compositions. Plaintiffs invest substantial money, time, effort, and creative talent to acquire, administer, publish, license, and otherwise exploit such copyrights, on their own behalves as well as on behalf of songwriters and other music publishers with whom they have contractual relationships.

23. The Music Publisher Plaintiffs own or administer, in whole or in part, copyrights and/or exclusive rights in and to thousands of musical compositions, including by way of example those compositions identified on the attached **Exhibit 2** (the "Musical Compositions"). The Music Publisher Plaintiffs: (a) possess certificates of copyright registration in the Musical Compositions; (b) for many recent works, have applied for certificates of copyright registration in the Musical Compositions but have not yet received registrations due to a backlog at the U.S. Copyright Office;

or (c) for works originating outside of the United States, have the rights to pursue this claim under the Berne Convention.

24. As the owners or administrators of copyrights (in whole or in part) in these Musical Compositions, the Music Publisher Plaintiffs possess the exclusive rights to, among other things, reproduce the Musical Compositions in copies or phonorecords, to prepare derivative works based upon the Musical Compositions, to distribute copies or phonorecords of the Musical Compositions to the public, and to perform the Musical Compositions publicly.

25. Bang is a corporation duly organized and existing under the laws of the State of Florida, with its principal place of business in Broward County, Florida.

26. Owoc is the Chief Executive Officer of Bang and is domiciled in the State of Florida.

## FACTS APPLICABLE TO ALL CLAIMS

**A.    The Bang Defendants Rely on Social Media to Grow their Business.**

27. Bang is the self-proclaimed "nation's leading energy and lifestyle brand."[3] Bang claims to "develop the world's most effective muscle, appearance and performance-enhancing supplementation, beverages and nutrition."[4]

28. Bang products, including its energy drinks and sports nutrition supplements, are sold in all 50 states in the United States and in 37 countries worldwide. (*Id.*)

29. The U.S. energy drink sector is "one of the strongest performers in the nonalcoholic space," with annual sales projected to reach $19.2 billion in 2024.[5] Bang is an "upstart" in the

---

[3] *See* https://bangenergycasting.com/what-does-it-take/ (last accessed April 27, 2021).

[4] *See* https://bangenergy.com/about/ (last accessed April 27, 2021).

[5] *See* FOOD DIVE, *How a Monster competitor plans to be the next $1B brand in energy drinks*, https://www.fooddive.com/news/how-a-monster-competitor-plans-to-be-the-next-1b-brand-in-energydrinks/ (Nov. 9, 2020).

industry that has "quickly captured just over 9% of the market," making it the third highest selling energy drink in the United States, behind Red Bull and Monster. (*Id.*)

30. To gain market share and to grow Bang's business, the Bang Defendants have relied on an aggressive and conspicuous social media campaign. The Bang Defendants actively market Bang on social media, including the wildly popular TikTok. Described as the "uncut heroin" of social media,[6] TikTok has become so ubiquitous as to spark geopolitical strife between the world's superpowers. With its music-centric, lip-synching, and dancing challenges, TikTok has inspired marketers to abandon traditional advertisements in a gold rush toward TikTok-branded hashtags and influencer-inspired content.

31. Bang is at the forefront of TikTok advertising. It runs a social media ambassador program called "Bang Influencers." The "Bang Influencers" are tasked with creating "unique and remarkable content across all social media platforms."[7] Bang also partners with several well-known TikTok influencers, *i.e.* creators who have garnered a substantial audience of TikTok "followers." Bang has, for example, partnered with Michael Le, who has 47 million TikTok followers and Q Park (nee Joyce Tanner), a YouTuber, who also has 26 million TikTok followers. Bang also has an extensive in-house video team that works with the influencers and self-produces social media content.

32. Bang and its influencers publish TikTok videos in which Bang products are highly visible and/or prominently featured (*e.g.*, Bang taste tests). In the videos, Bang influencers are known to "sport vibrant outfits with the Bang logo and create fun dance videos or skits with the

---

[6] *See* OZY, *The Power of TikTok*, https://www.ozy.com/news-and-politics/the-power-of-tiktok/362145/ (July 25, 2020).

[7] *See* https://bangenergycasting.com/what-does-it-take/ (last accessed April 27, 2021).

products."[8] These videos essentially serve as modern-day product placement commercials for Bang's products.

33. In exchange for making Bang videos and commercials, influencers receive Bang sponsorships and cross-collaborative exposure by which both parties gain influence – the coin of the realm in the social media marketplace.

34. The Bang Defendants own and operate the Bang TikTok Accounts, which are directed at and accessible throughout the United States and in the State of Florida. Together, the Bang TikTok Accounts have roughly two million followers and six million likes. Additionally, Bang's branded hashtag (#bangenergy) has netted over 12 billion views, while related hashtags #bangenenergy (46.3 million), #bangenergydrink (31.9 million views), #bangenergyceo (12.8 million views), and have each generated millions of views.

35. Bang brags about its social media marketing success: "Today the Bang Energy TikTok account stands at over 1 million followers and #BangEnergy has been viewed 7.6 Billion times. Numbers don't lie."[9]

**B. The Bang Defendants Flagrantly Infringe Plaintiffs' Copyrights on Social Media**.

36. The Bang Defendants did not achieve widespread social media visibility by accident.

37. To help popularize their videos, the Bang Defendants have posted at least 100 videos on the Bang TikTok Accounts that intentionally added Plaintiffs' famous copyrighted musical

---

[8] *See* https://neoreach.com/bang-energy-campaign-teardown/ (last accessed April 27, 2021).

[9] *See* https://bangenergy.com/blog/its-the-bang-energy-tiktok-takeover/ (Nov. 24, 2020).

works (the "Infringing Videos"). Among the Infringing Videos, Plaintiffs own the copyrights in at least 69 sound recordings and 94 compositions.

38. In addition to posting the Infringing Videos on the Bang TikTok Accounts, the Bang Defendants urge Bang Influencers to post additional Infringing Videos on their personal TikTok accounts.

39. Because TikTok users can search for videos based on the songs used in those videos, the Bang Defendants exploit trending songs to make the Infringing Videos more appealing to users. For example, the Bang Defendants have posted videos using Megan Thee Stallion's Grammy-Award winning viral hit "Savage," which has appeared in 25 million TikTok videos.

40. The Bang Defendants profit directly or indirectly from the Infringing Videos by, among other things, building brand awareness, engaging consumers, and increasing sales of Bang products.

41. By incorporating Plaintiffs' copyrighted works into the Infringing Videos, and then making those Infringing Videos available to the public without license or authorization from Plaintiffs, the Bang Defendants are infringing Plaintiffs' exclusive rights to reproduce, prepare derivative works based upon, distribute, and publicly perform the works listed in Exhibits 1 and 2. This infringement includes, but is not limited to: (a) adapting Plaintiffs' copyrighted works to create new, unauthorized derivative works (*i.e.*, the Infringing Videos); (b) uploading the Infringing Videos to its own computer servers and the computer servers of third-party hosting services; and (c) transmitting the Infringing Videos to consumers via the Bang TikTok Accounts.

42. Exhibits 1 and 2 contain illustrative, non-exhaustive examples of known infringements. Plaintiffs are continuing to investigate the scope of the Bang Defendants' infringement, including the measures taken by the Bang Defendants to intentionally induce Bang

Influencers to infringe Plaintiffs' copyrighted works.

43. Discovery is likely to reveal that the Bang Defendants have unlawfully exploited numerous more sound recordings and musical compositions owned and/or controlled by Plaintiffs, in whole or in part, on TikTok, as well as on other social media platforms, including YouTube and Instagram. Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims for infringement of Plaintiffs' copyrighted works as it uncovers such infringement during the course of discovery.

C. **The Bang Defendants Continue Infringing Plaintiffs' Copyrights Even After Plaintiffs Demand That They Stop**.

44. In January 2021, Plaintiffs' counsel and Bang's counsel exchanged correspondence about the Infringing Videos. Plaintiffs asked for evidence of a license authorizing the Bang Defendants to use Plaintiffs' copyrighted musical works, but the Bang Defendants were unable to provide such a license (because it does not exist). Rather, Bang's counsel responded that "[o]ur understanding is that TikTok provides use of these songs, and others, with a license to all of its members."

45. The Bang Defendants are mistaken. TikTok does *not* grant a license to its members to use any of Plaintiffs' copyrighted musical works. TikTok's Intellectual Property Policy expressly states: "TikTok respects the intellectual property rights of others, and we expect you to do the same. TikTok's Terms of Service and Community Guidelines *do not allow posting, sharing, or sending any content that violates or infringes someone else's copyrights*, trademarks or other intellectual property rights."[10]

---

[10] TIKTOK, *Intellectual Property Policy,* https://www.tiktok.com/legal/copyright-policy?lang=en (last accessed April 27, 2021) (emphasis added).

46. Similarly, TikTok's Terms of Service unmistakably provide, in all caps:

"NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE."[11]

47. The Bang Defendants are well aware that their conduct constitutes copyright infringement. Bang is a sophisticated entity. The Bang Defendants expend substantial resources to create and develop Bang's intellectual property, including its social media content. Bang has also filed an action in this Court to protect its own intellectual property rights. *See Vital Pharmaceuticals, Inc. d/b/a VPX Sports v. Monster Energy*, Case No. 0:19-cv-60809-RKA (S.D. Fla. 2019).

48. Moreover, Plaintiffs expressly notified the Bang Defendants of their infringement in January 2021. Nevertheless, the Bang Defendants have continued to include infringing content in their videos and to make the Infringing Videos available to the public. The Bang Defendants' infringement therefore is willful and deliberate.

## COUNT I
## COPYRIGHT INFRINGEMENT
### (By the Record Company Plaintiffs against the Bang Defendants)

49. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 48 of this Complaint.

50. By the acts set forth above, the Bang Defendants have infringed the Record Company Plaintiffs' copyrights in the Recordings, including by reproducing, distributing, adapting, and digitally publicly performing the Recordings without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

---

[11] TIKTOK, *Terms of Service,* https://www.tiktok.com/legal/terms-of-service?lang=en (last accessed April 27, 2021) (emphasis in original).

51. Each such infringement by the Bang Defendants of the Recordings constitutes a separate and distinct act of infringement.

52. The Bang Defendants' acts of infringement are willful, in disregard of and with indifference to the rights of the Record Company Plaintiffs.

53. As a direct and proximate result of the infringements by the Bang Defendants, the Record Company Plaintiffs are entitled to damages and to the Bang Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, the Record Company Plaintiffs are entitled to statutory damages for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

54. The Record Company Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

55. As a result of the Bang Defendants' conduct, the Record Company Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  The Record Company Plaintiffs are informed and believe, and on that basis aver, that unless enjoined and restrained by this Court, the Bang Defendants will continue to infringe the Record Company Plaintiffs' rights in the Recordings.  The Record Company Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin the Bang Defendants' continuing infringing conduct.

## COUNT II
## COPYRIGHT INFRINGEMENT
### (By the Music Publisher Plaintiffs against the Bang Defendants)

56. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 48 of this Complaint.

57. By the acts set forth above, the Bang Defendants have infringed the Music Publisher Plaintiffs' copyrights in the Musical Compositions by reproducing, adapting, distributing, and publicly performing the Musical Compositions without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

58. Each such infringement by the Bang Defendants of the Musical Compositions constitutes a separate and distinct act of infringement.

59. The Bang Defendants' acts of infringement are willful, in disregard of and with indifference to the rights of the Music Publisher Plaintiffs.

60. As a direct and proximate result of the infringements by the Bang Defendants, the Music Publisher Plaintiffs are entitled to damages and to the Bang Defendants' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, the Music Publisher Plaintiffs are entitled to maximum statutory damages for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

61. The Music Publisher Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

62. As a result of The Bang Defendants' conduct, the Music Publisher Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. The Music Publisher Plaintiffs are informed and believe, and on that basis aver, that unless enjoined and restrained by this Court, the Bang Defendants will continue to

infringe the Music Publisher Plaintiffs' rights in the Musical Compositions. The Music Publisher Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin the Bang Defendants' continuing infringing conduct.

### COUNT III
### CONTRIBUTORY/VICARIOUS COPYRIGHT INFRINGEMENT
### (By the Record Company Plaintiffs against Bang)

63. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 48 of this Complaint.

64. Third-party influencers have posted the Infringing Videos on their own personal TikTok accounts (the "Influencer Videos"). In doing so, the influencers have infringed the Record Company Plaintiffs' copyrights in the Recordings by reproducing, adapting, distributing, and publicly performing the Recordings without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

65. Bang knew or should have known about the Influencer Videos. Bang intentionally induced or materially contributed to the Influencer Videos. Bang has, on information and belief, provided creative direction to the influencers, produced the Influencer Videos or allowed the influencers to draw upon the skills and resources of Bang's in-house production team. Bang also possessed the right and ability to supervise the Influencer Videos as well as a direct financial interest in the Influencer Videos. As a result, Bang is liable for contributory and/or vicarious copyright infringement for the Influencer Videos.

66. Each Influencer Video constitutes a separate and distinct act of infringement.

67. The acts of infringement are willful, in disregard of and with indifference to the rights of the Record Company Plaintiffs.

68. As a direct and proximate result of the Influencer Videos, the Record Company

Plaintiffs are entitled to damages and to the Bang Defendants' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, the Record Company Plaintiffs are entitled to maximum statutory damages for each Influencer Video, or in such other amount as may be proper under 17 U.S.C. § 504(c).

69. The Record Company Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

70. As a result of the Influencer Videos, the Record Company Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. The Record Company Plaintiffs are informed and believe, and on that basis aver, that unless enjoined and restrained by this Court, the Record Company Plaintiffs' rights in the Recordings will continue to be infringed. The Record Company Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin the continuing infringing conduct.

### COUNT IV
### CONTRIBUTORY/VICARIOUS COPYRIGHT INFRINGEMENT
### (By the Music Publisher Company Plaintiffs against Bang)

71. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 48 of this Complaint.

72. Third-party influencers have infringed the Music Publisher Plaintiffs' copyrights in the Musical Compositions by reproducing, adapting, distributing, and publicly performing the Musical Compositions without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

73. Bang knew or should have known about the Influencer Videos. Bang intentionally induced or materially contributed to the Influencer Videos. Bang has, on information and belief,

provided creative direction to the influencers, produced the Influencer Videos or allowed the influencers to draw upon the skills and resources of Bang's in-house production team. Bang also had the right and ability to supervise the Influencer Videos and a direct financial interest in the Influencer Videos. As a result, Bang is liable for contributory and/or vicarious copyright infringement for the Influencer Videos.

74. Each Influencer Video constitutes a separate and distinct act of infringement.

75. The acts of infringement are willful, in disregard of and with indifference to the rights of the Music Publisher Plaintiffs.

76. As a direct and proximate result of the Influencer Videos, the Music Publisher Plaintiffs are entitled to damages and to the Bang Defendants' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, the Music Publisher Plaintiffs are entitled to maximum statutory damages for each Influencer Video, or in such other amount as may be proper under 17 U.S.C. § 504(c).

77. The Music Publisher Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

78. As a result of the Influencer Videos, the Music Publisher Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. The Music Publisher Plaintiffs are informed and believe, and on that basis aver, that unless enjoined and restrained by this Court, the Music Publisher Plaintiffs' rights in the Musical Compositions will continue to be infringed. The Music Publisher Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin the continuing infringing conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment in their favor and against the Bang Defendants:

1. For a preliminary and permanent injunction enjoining and restraining the Bang Defendants and their respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction from directly or indirectly infringing in any manner any right in any and all copyrighted works (or portions thereof), whether now in existence or later created, in which any Plaintiff (including its parents, subsidiaries, affiliates, or distributed labels) owns or controls an exclusive right under Section 106 of the United States Copyright Act (17 U.S.C. § 106) or state law, including without limitation by directly or indirectly copying, reproducing, downloading, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing, or otherwise exploiting in any manner any of Plaintiffs' Recordings or Musical Compositions, including but not limited to those set forth in Exhibits 1 and 2 to the Complaint;

2. For the Bang Defendants' profits and damages in such amount as may be determined; alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c);

3. For Plaintiffs' reasonable attorneys' fees and costs;

4. For prejudgment interest according to law; and

5. For such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated:  April 28, 2021

Respectfully submitted,

**PRYOR CASHMAN LLP**
201 South Biscayne Boulevard, Suite 2700
Miami, Florida 33131
Telephone: (786) 582-3011
Facsimile:  (786) 582-3004

*s/ James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
Brendan S. Everman
Florida Bar No. 68702
jsammataro@pryorcashman.com
beverman@pryorcashman.com
ksuarez@pryorcashman.com

*Attorneys for Plaintiffs*