UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:21-cv-60914-Dimitrouleas/Hunt

UMG Recordings, Inc.; Capitol Records, LLC;
Universal Music Corp.; Universal Music – Z
Tunes LLC; Universal Musica, Inc.; PolyGram
Publishing, Inc.; Songs of Universal, Inc.; and
Universal Music - MGB NA LLC,

        Plaintiffs,
v.

Vital Pharmaceuticals, Inc. *d/b/a* Bang Energy,
and Jack Owoc, an individual,

        Defendants.
_____/

### PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS

Pursuant to Federal Rule of Civil Procedure 37 and this Court's inherent power, Plaintiffs respectfully request that the Court impose adverse inferences against defendants Vital Pharmaceuticals, Inc. *d/b/a* Bang Energy ("Bang") and Jack Owoc (collectively, "Defendants"), conduct an evidentiary hearing on Defendants' ***admitted*** spoliation, award Plaintiffs their attorneys' fees and costs incurred in bringing this motion, and impose other such relief as the Court deems proper.

### INTRODUCTION

The "delete" button is a powerful tool. Here, Defendants have used it as both a sword and a shield. As a "shield," Defendants destroyed smoking gun evidence by deleting social media videos incorporating Plaintiffs' copyrighted music. This destruction is particularly insidious because Defendants could have easily preserved the videos by marking them as "private" with a click of a button. As a "sword," Defendants then audaciously attempted to capitalize on their destruction of evidence by moving for summary judgment based on ***Plaintiffs'*** alleged failure to

present sufficient evidence of infringement.

For months, Defendants led Plaintiffs to believe that they would soon produce the videos, which are perhaps the most critical evidence in this case. It was not until recently that Defendants' spoliation became apparent. Specifically, in response to a series of adverse discovery rulings, Defendants were recently forced to admit that:

- Defendants removed 513 videos from their social media accounts after receiving cease and desist demands from Plaintiffs, Sony Music Entertainment, and others ("Removed Videos");[1]

- Defendants failed to preserve about 436 Removed Videos;

- the Removed Videos include at least 74 additional infringing videos that were not previously known to Plaintiffs ("Additional Infringing Videos"); and

- Defendants knowingly concealed this information from Plaintiffs and the Court for months while strategically allowing several critical case deadlines to pass.

Plaintiffs have been severely prejudiced by Defendants' spoliation and lack of candor. The destroyed videos are directly relevant to both liability and damages. If properly preserved, the videos would have revealed their social media "reach" – the number of views, likes, shares, and comments by other social media users ("Engagement Data"). Without that evidence, Plaintiffs were unable to move for summary judgment on the Additional Infringing Videos and were unable to use the Engagement Data to prepare a fully informed expert report on actual damages.

Defendants' egregious misconduct warrants sanctions, including the imposition of an adverse inference that: (i) Defendants are liable to Plaintiffs for copyright infringement as to each video previously identified by Plaintiffs; (ii) Defendants are liable to Plaintiffs for copyright

---

[1] The adverse rulings were entered in this case and in the parallel litigation initiated by Sony Music Entertainment involving the same attorneys. *See Sony Music Entertainment v. Vital Pharmaceuticals, Inc.*, No. 1:21-cv-22825-Dimitrouleas/Becerra (the "Sony Litigation").

infringement for each Additional Infringing Video; and (iii) the infringing videos containing Plaintiffs' copyrighted works were viewed as many times as Defendants' most popular videos on TikTok, *i.e.*, more than four million times each.

## BACKGROUND

**A.      Plaintiffs Demanded that Defendants Preserve the TikTok Videos in December of 2020**.

Shortly after discovering some of Defendants' infringements, Plaintiffs' in-house counsel exchanged correspondence with Bang's in-house counsel.  (*See* D.E. 58, ¶ 38 & D.E. 58-3).  As part of these discussions, on December 9, 2020, Plaintiffs' counsel expressly requested that Bang "preserve all documents and records relating to the use of [Plaintiffs'] music, including but not limited to any electronic data and other information which may be relevant or discoverable in the event of litigation."  (D.E. 58-3 at 3).

Despite pre-suit efforts to amicably resolve this dispute, Defendants refused to remove the infringing videos and continued to post new infringing videos, forcing Plaintiffs to file the Complaint on April 28, 2021.  (D.E. 58, ¶ 39).  Plaintiffs attached two exhibits to their Complaint identifying 119 infringing TikTok videos posted by Defendants ("Identified Videos").  (Compl., Exs. 1-2).[2]  Plaintiffs noted that discovery would likely reveal that Defendants "have unlawfully exploited numerous more sound recordings and musical compositions" and reserved the right to amend the Complaint "to assert additional claims for infringement ... as it uncovers such infringement during the course of discovery." (*Id.* ¶¶ 42-43).  At some indeterminate date during the "the Summer and Fall of 2021," Defendants removed both the Identified Videos and hundreds of additional Removed Videos.  (Everman Decl. ¶ 12 & Ex. 2 at ¶ 4).

---

[2] On February 23, 2022, Plaintiffs subsequently furnished Defendants with a revised chart listing 140 Identified Videos.

B.     **Defendants Failed to Produce the Removed Videos**.

On January 5, 2022, Defendants agreed to serve a *list* of Removed Videos and to produce the *actual* Removed Videos. (*See* D.E. 29-2 & 40-1 at 2 (confirming the parties' agreement relating to RFP Nos. 29, 31-32 and Rog. No. 5)). Despite this agreement, Defendants refused to produce responsive documents and information by a date certain, prompting Plaintiffs to file their first motion to compel on January 10, 2022. (D.E. 29). On February 18, 2022, the Honorable Judge Snow entered an order granting Plaintiffs' motion, finding that "Defendants have been provided with enough time" to respond to discovery, and requiring Defendants to fully respond to discovery and produce all responsive documents by February 25, 2022. (D.E. 33).

Incredibly, Defendants ignored the Court's Order. In particular, Defendants did not produce a single video or the list of Removed Videos by the Court's deadline or, for that matter, the April 15, 2022 discovery cutoff. (Everman Decl. ¶ 3). Instead, on April 27, 2022, Defendants eventually produced an incomplete set of 106 TikTok videos two days before the dispositive motion deadline. (*Id.* ¶ 4). The 106 videos included 30 duplicates, so Defendants actually produced only 76 unique videos. (*Id.*). Further, 74 of the 76 unique videos had already been produced by **Plaintiffs**, suggesting that Defendants simply repackaged Plaintiffs' videos. (*Id.* ¶ 5). None of the videos produced by Defendants show the Engagement Data. (*Id.* ¶ 6). Defendants still have not served a list of Removed Videos in this case.[3] Compounding matters, Defendants moved for summary judgment based on **Plaintiffs'** alleged failure to present sufficient evidence of copyright infringement. (*See* D.E. 60 at 9).

---

[3] Defendants produced the list of Removed Videos in the Sony Litigation. (Everman Decl. ¶ 13 & Ex. 3).

C.     **Defendants Admittedly Spoliated Hundreds of Relevant Videos**.

Since January 5, 2022, Defendants misled Plaintiffs into believing that the Removed Videos would soon be produced. For example, on April 1, 2022, more than a month after Defendants missed their first Court-ordered deadline to produce the Removed Videos, Defendants represented to Plaintiffs and the Court that they were "undertaking efforts to produce those videos." (D.E. 41 at 2). Unbeknownst to Plaintiffs, Defendants already knew that many of the videos had *not* been preserved and were, thus, not going to be produced.

On May 5, 2022, Plaintiffs discovered that Defendants failed to preserve *some* videos. Specifically, in a deposition, Bang's former legal support manager, Alex Rodriguez, testified that "some" videos were not preserved. (Everman Decl. ¶ 7 & Ex. 1 at 21:25-22:2). Mr. Rodriguez did not recall how many videos were lost and refused to provide additional details about preservation efforts based upon the instruction of Defendants' counsel. (*Id*. at 22:3-23:18). Given that Bang terminated Mr. Rodriguez by the "middle of March" in 2022 (*id.* at 8:25-9:2), Defendants knowingly concealed their failure to preserve the TikTok videos from both Plaintiffs and the Court *for months*.

On May 13, 2022, pursuant to Court Order in the Sony Litigation, Defendants finally served a list of Removed Videos. (*Id.* ¶ 13 & Ex. 3). The list confirmed that Defendants "removed" 513 social media posts containing copyright-protected music, including all videos previously identified by Plaintiffs. (*Id.*). Also, on May 15, 2022, pursuant to Court Order in the Sony Litigation, Defendants submitted a declaration from Gideon Eckhouse, Bang's in-house counsel, attesting that Bang took down "no less [sic] than 215 accused social media posts" in "the Summer and Fall of 2021"; converted some TikTok videos to "private mode"; can no longer access some of the "private mode" videos; and has a "Dropbox" containing the videos that Bang has not

searched. (*Id.* ¶ 12 & Ex. 2 at ¶¶ 4-5, 7, 11).

It was not until May 30, 2022 that Plaintiffs finally determined the full scope of Defendants' spoliation in this case. On that date, pursuant to the second Court-ordered deadline to fully and finally respond to discovery (D.E. 116), Defendants finally supplemented their discovery responses and confirmed that they had already produced all Removed Videos in their possession. (*Id.* ¶ 15 & Ex. 5). In other words, although Defendants agreed to produce 513 Removed Videos, they possess only 76 such videos. By comparing Defendants' document production to the list of Removed Videos, it is apparent that Defendants spoliated about 436 Removed Videos and at least 74 Additional Infringing Videos.

D.   **Timeline of Salient Events**.

The following timeline demonstrates Defendants' bad faith destruction of critical evidence:

| Date | Event |
|---|---|
| December 9, 2020 | Plaintiffs demand that Defendants preserve all TikTok videos. (D.E. 58-3). |
| April 28, 2021 | Plaintiffs file the Complaint listing 119 Identified Videos. (D.E. 1). |
| Summer and Fall of 2021 | Defendants take down the Removed Videos. (Everman Decl. ¶ 12 & Ex. 2 at ¶ 4). |
| January 10, 2022 | Plaintiffs file their first motion to compel. (D.E. 29). |
| February 3, 2022 | Plaintiffs produce 92 of Defendants' TikTok videos. |
| February 18, 2022 | The Court orders Defendants to produce all Removed Videos by February 25, 2022. (D.E. 33) |
| February 22, 2022 | Plaintiffs furnish Defendants with an updated list of 140 Identified Videos. (D.E. 58-4). |
| February 25, 2022 | Defendants fail to comply with the Court's Order dated February 18, 2022. |
| Middle of March 2022 | Defendants are aware that they have not preserved all Removed Videos. (Everman Decl. ¶ 7 & Ex. 1). |

| | |
|---|---|
| March 18, 2022 | Plaintiffs file a second motion to compel and for sanctions. (D.E. 40). |
| April 1, 2022 | Defendants represent to Plaintiffs and the Court that they are "undertaking efforts to produce those videos." (D.E. 41 at 2). |
| April 15, 2022 | Defendants fail to produce a single video before the discovery cutoff. (Everman Decl. ¶ 3). |
| April 27, 2022 | Defendants produce 76 unique TikTok videos, only two of which were not previously produced by Plaintiffs. (*Id.* ¶¶ 4-5). |
| April 29, 2022 | Defendants move for summary judgment based on **Plaintiffs'** alleged failure to produce videos evidencing each instance of Defendants' copyright infringement. (D.E. 60). |
| May 13, 2022 | Pursuant to Court Order, Defendants serve a list of 513 Removed Videos. (Everman Decl. ¶ 13 & Ex. 3). |
| May 23, 2022 | The Court grants Plaintiffs' second motion to compel, sanctions Defendants, and orders Defendants to fully respond to discovery by May 30, 2022. (D.E. 116). |
| May 30, 2022 | Defendants serve supplemental discovery responses confirming that they have already produced all Removed Videos in their possession. (Everman Decl. ¶ 15 & Ex. 5). |

## ARGUMENT

**A.     Legal Standard for Imposing Spoliation Sanctions**.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Hyundai Motor Am. Corp. v. N. Am. Auto. Servs., Inc.*, No. 20-82102, 2021 WL 3111191, at *5 (S.D. Fla. July 22, 2021) (quoting *Gaff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009)).

District courts possess "broad discretion" to impose spoliation sanctions, as this authority derives "from the court's inherent power to manage its own affairs' and 'achieve the orderly and expeditious disposition of cases.'" *Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *5 (quoting *Flury*, 427 F.3d 939, 944 (11th Cir. 2005)). "[S]poliation sanctions may include: (1) dismissal of

the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation which raises a presumption against the spoliator." *Id.* (quoting *Flury*, 427 F.3d at 945); *see also Martinez v. Brink's, Inc.*, 117 F. App'x 263, 269 n.7 (11th Cir. 2006) (the court may impose a broad spectrum of sanctions, including the application of an adverse inference).

To be entitled to an adverse inference, a party must prove: (1) that the missing evidence once existed; (2) that the alleged spoliator had a duty to preserve the evidence; (3) that the evidence was crucial to the movant to be able to prove its prima facie case or defense; and (4) the alleged spoliator acted in bad faith. *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *6. Critically, "courts in this district interpret 'bad faith' in the spoliation context to not require a showing of malice or ill-will, but rather conduct evidencing more than mere negligence." *Id*. at *9; *see also Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2516 (2021) ("[B]ad faith 'in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence.'") (quoting *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)).

Each of these four factors is easily satisfied.

**B.    Spoliation Sanctions Are Warranted**.

    **1.    The Removed Videos Irrefutably Existed**.

Because Defendants have identified 513 Removed Videos (Everman Decl. ¶ 13 & Ex. 3), there is no question that the Removed Videos existed.

    **2.    Defendants' Duty to Preserve the Videos Arose on or Before December 9, 2020**.

"A party has an obligation to retain relevant documents, including emails, when litigation is reasonably anticipated." *Penick v. Harbor Freight Tools, USA, Inc*., 481 F. Supp. 3d 1286, 1293 (S.D. Fla. 2020) (citation omitted) (collecting cases); *Optowave Co. v. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006) ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to

litigation, or potential litigation … and destroys such documents and information. [A litigant] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action ….").

Here, Defendants were on notice of the likelihood of litigation in December of 2020 when: (i) the parties entered into an agreement tolling the statute of limitations on Plaintiffs' claims; and (ii) Plaintiffs expressly demanded that Defendants preserve the videos. (*See* D.E. 58, ¶ 38). As a result, Defendants' duty to preserve the videos was triggered as of December 9, 2020. *See Micron Technology, Inc. v. Rambus,* 255 F.R.D. 135, 148 (D. Del. 2009) (finding that the duty to preserve may arise "many years before litigation commences"); *Kronish v. United States*, 150 F.3d 112, 126-27 (2d Cir. 1998) (holding that defendants' duty to preserve arose ten years before the litigation was filed).

### 3.     The Removed Videos Are Crucial Evidence.

The Removed Videos are perhaps the most crucial evidence in this case.[4] Indeed, Defendants argued that Plaintiffs cannot prove infringement without those videos. (*See* D.E. 60 at 9-11). Moreover, the Engagement Data for the Removed Videos is relevant to actual damages because it could be used to determine Defendants' profits attributable to the infringement. The importance of the Removed Videos is obvious.

---

[4] *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *9 (holding that where plaintiff alleged conspiracy to defraud plaintiff by intentionally damaging engines, the engines were crucial evidence); *Penick*, 481 F. Supp. 3d at 1294 (holding that the generator that plaintiff alleged to have malfunctioned was "material to the proof or defense of a claim at issue in this case"); *Graff*, 310 F. App'x at 302 (portion of boat that had fractured was "*the* critical piece of evidence in this case" as it would support either plaintiff or defendant's arguments as to whether a manufacturing defect had caused the accident at issue) (emphasis in original). *See generally Paramount Pictures Corp. v. Dunn*, 234 F.R.D. 102, 112 (E.D. Pa. 2005) (finding spoilation inference sanction appropriate where the alleged infringer destroyed evidence relative to Paramount's copyright infringement claim).

### 4. Defendants Destroyed the Videos in Bad Faith.

In the Eleventh Circuit, bad faith requires neither "malice" nor "ill-willed" destruction of evidence. *Penick*, 481 F. Supp. 3d at 1293. Rather, bad faith exists where there is "hiding of adverse evidence." *Tesoriero*, 965 F.3d at 1184. "Parties can establish the requisite bad faith through either direct or circumstantial evidence." *See In Matter of Compl. of Boston Boat III, L.L.C.*, 310 F.R.D. 510, 520 (S.D. Fla. 2015) (finding circumstantial bad faith and imposing rebuttable adverse inference because defendant spoliated "crucial" evidence after litigation began).

Here, there is direct evidence of bad faith. Specifically, Defendants moved for summary judgment on 23 Identified Videos solely because "Plaintiffs have failed to produce the allegedly infringing videos themselves." (D.E. 60 at 9). But Defendants admittedly removed *each* of those 23 videos and knowingly failed to produce them. (*See* Everman Decl. ¶ 13 & Ex. 3). Seeking summary judgment on videos that Defendants spoliated and knowingly concealed from Plaintiffs "smacks of bad faith." *Tesorierio*, 965 F.3d at 1186.

Regardless, even if there were no direct evidence of bad faith, Plaintiffs could demonstrate each of the four factors required to show bad faith circumstantially:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue; (2) the spoliating party took an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *7-8 (citing *Penick*, 481 F. Supp. 3d at 1292).

### a. Evidence Once Existed That Was Material to Plaintiffs' Claims.

In that the Removed Videos are critical evidence for both liability and damages, the Removed Videos are plainly material to the proof of a claim at issue. *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *10 (finding this factor met where plaintiff intentionally destroyed

critical evidence "at the heart of the [] allegations ... which Defendants sought to examine and inspect but were prevented from doing so by Plaintiff's disposal").

### b. Defendants Admit To Taking Affirmative Acts Causing the Removed Videos To Be Lost.

Defendants admittedly took affirmative acts that caused the Removed Videos to be lost. Specifically, both Bang's in-house counsel and Bang's former legal manager admitted that Defendants removed the videos without preserving all of them. (Everman Decl. Ex. 2 at ¶¶ 4-9 (admitting that Defendants "took down" hundreds of videos and only some videos were preserved) Everman Decl. Ex. 1 at 21:25-22:2 ("Q: Were there any videos that were not preserved? A: Yes, sir."). Defendants are culpable for the loss of the Removed Videos and the attendant Engagement Data. *See* Fed. R. Civ. P. 37(e).

### c. Defendants Knew They Had a Duty To Preserve the Removed Videos.

At the time that Defendants spoliated the Removed Videos (on or after July of 2021), Plaintiffs had already: (i) made a pre-suit preservation request (December 9, 2020); and (ii) commenced litigation (April 28, 2021). Under well-settled law, Defendants knew or should have known they had a duty to preserve the videos. *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *10 (finding that the second and third elements are satisfied because Defendants "allowed" the evidence to be destroyed "by not taking reasonable steps" to ensure their preservation "at a time when [they were] under a clear duty to preserve").

### d. Defendants' Conduct Cannot Credibly Be Explained Except as Bad Faith.

Defendants have provided no explanation for the removal and destruction of hundreds of Removed Videos. Tellingly, Defendants have failed to explain: (i) how many TikTok videos they converted to "private mode"; (ii) what efforts (if any) they took to preserve other Removed Videos; (iii) why they have not produced all the Removed Videos; or (iv) why they refused to search a

"Dropbox" folder that ostensibly contains the Removed Videos. Defendants' admitted failure to preserve all Removed Videos, with no credible explanation, is sufficient to establish bad faith. *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *11 (finding bad faith where defendants "fail[ed] to offer an excuse that places culpability on anyone other than [Defendants] or otherwise sets forth any explanation, let alone a valid one, for the loss of the [evidence]"); *Penick*, 481 F. Supp. at 1294 (finding bad faith where plaintiff "fails to offer an excuse that in any way places fault on anyone else or which otherwise sets forth a valid reason to destroy the generator").

The failure to explain their preservation efforts is particularly damning given that converting a TikTok video to "private mode" can be accomplished with the simple click of a button. If Defendants had clicked "private," the TikTok videos would have remained on Defendants' accounts and would have been preserved with the Engagement Data.[5] Defendants also could have preserved the videos by recording them on their phones before taking them down, using Apple's "screen recording" function,[6] or utilizing one of many other available programs capable of recording social media videos.[7] *See Boston Boat III*, 310 F.R.D. at 522 (finding the fourth factor of circumstantial bad faith was met because "it [was] possible that other steps could have been taken to minimize the prejudice to [plaintiff]").

Bad faith can also be inferred from Defendants' deception. Defendants knew that they had failed to preserve all Removed Videos by the middle of March 2022 (and presumably as early as Summer of 2021 when they allegedly started the removal process). However, Defendants

---

[5] *See* TIKTOK, "Video Privacy," https://support.tiktok.com/en/account-and-privacy/account-privacy-settings/video-visibility (last accessed June 9, 2022) ("The view count on your videos reflects all views to date, it does not reset after you update the privacy settings.").

[6] https://support.apple.com/guide/iphone/take-a-screenshot-or-screen-recording-iphc872c0115/ios.

[7] https://inflact.com/downloader/instagram/video/.

continued to mislead Plaintiffs and the Court into believing that the videos would soon be produced. (*See* D.E. 41). In the meantime, several critical case deadlines passed, including the discovery cutoff (April 15, 2022), dispositive motions (April 29, 2022), and expert reports (May 12, 2022). Defendants endeavored to hide their spoliation by producing an incomplete set of videos on the eve of the dispositive motion deadline and then moving for summary judgment based on Plaintiffs' alleged lack of evidence. Notably, after learning of Defendants' failure to preserve the subject videos in the Sony Litigation, Judge Becerra rhetorically asked: "**How is that not bad faith**?" (Everman Decl. ¶ 14 & Ex. 4 at p. 49) (emphasis added). There is no answer. Accordingly, spoliation sanctions are warranted.

C. **An Adverse Inference Is the Appropriate Remedy**.

In determining the appropriate sanction for spoliation, courts consider: (1) the bad faith of the spoliator; (2) the degree of prejudice sustained by the moving party; and (3) what is required to cure the prejudice. *Schultze v. 2K Clevelander, LLC*, No. 17-cv-22684, 2018 WL 4859071, at *7 (S.D. Fla. Oct. 4, 2018) (granting adverse inference that destroyed evidence would have been favorable to plaintiff). Courts routinely impose an adverse inference if a party has spoliated unfavorable evidence. *See Astrum*, 149 F. Supp. 3d at 1349; *Graff*, 310 F. App'x at 302; *Penick*, 481 F. Supp. 3d at 1295; *Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *14; *Optowave Co.*, 2006 WL 3231422, at *12; *Boston Boat III*, 310 F.R.D. at 523.

Here, Defendants acted recklessly, if not intentionally, and did so with full knowledge that deleting the videos would materially harm Plaintiffs' case. *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *11 ("[T]he circumstances infer an awareness by [the plaintiff] that the non-preserved 144 engines would likely not help its case, leading [the plaintiff] to perhaps be deliberately ignorant of whether the engines were, in fact, being preserved as required.").

Defendants' conduct has severely prejudiced Plaintiffs. The Removed Videos are direct evidence of Defendants' infringement, and the Engagement Data is relevant to actual damages. Further, by failing to preserve the Removed Videos and failing to disclose this fact to Plaintiffs, Defendants prevented Plaintiff from moving for summary judgment on the Additional Infringing Videos.

Defendants' summary judgment motion illuminates both Plaintiffs' prejudice and Defendants' bad faith. Defendants moved for summary judgment on, among other TikTok videos, a video featuring Plaintiffs' copyrighted composition, "Take You Dancing" by Jason Derulo ("Derulo Video"). Defendants argued that summary judgment should be entered in their favor because "Plaintiffs have failed to provide a URL and no other information that could be used to identify the purportedly accused video – Plaintiffs' [sic] have not even identified the particular TikTok account from which the mystery videos were supposedly posted." (*See* D.E. 60 at 9). But the Derulo Video was not a "mystery" to Defendants. To the contrary, Defendants were well aware of the Derulo Video and possessed three URLs for it, which Defendants identified two weeks later in their list of Removed Videos. (D.E. 136-1 at 22, 25). Stated differently, ***Defendants moved for summary judgment based on Plaintiffs' failure to present evidence that Defendants: (i) possessed; and (ii) wrongfully withheld from Plaintiffs***. This shocking lack of candor violates both Rule 11 and Local Rule 11.1.

Plaintiffs' prejudice is also demonstrated by Defendants' declaration and putative expert witness report from Peter Kent ("Kent"). Kent asserted that any damages should be limited because the Identified Videos were purportedly viewed only 79 times per day (during the period

of time when RivalIQ, a social-media analysis service, allegedly tracked the videos).[8]  (*See* D.E. 62-3 at ¶¶ 20, 22).  Yet, Bang's TikTok videos are routinely viewed tens or hundreds of thousands of times.[9]  In particular, one video[10] has been viewed more than four million times and has been liked by more than 110,000 TikTok users:




---

[8] It is unclear which videos were tracked by RivalIQ, during what time period the videos were tracked, and how many days the videos were available to the public.

[9] *See, e.g.,* https://www.tiktok.com/@bangenergy/video/6804939799867247878?is_copy_url=1&is_from_webapp=v1; https://www.tiktok.com/@bangenergy/video/6805209233445965062?is_copy_url=1&is_from_webapp=v1; https://www.tiktok.com/@bangenergy/video/6808231254991965446?is_copy_url=1&is_from_webapp=v1).

[10] *See* https://www.tiktok.com/@bangenergy/video/6796835507801230598?is_copy_url=1&is_from_webapp=v1.
.

Kent's attempt to diminish the reach and importance of Bang's TikTok videos also stands in stark contrast to the testimony offered by Bang during its recent unsuccessful lawsuit with Monster Energy.  There, Meg Owoc, Bang's Senior Director of Marketing, testified that, through social media, Bang "had a reach of 2.28 billion people." (*See* Everman Decl. ¶ 16 & Ex. 6 at 19). Bang routinely touts that the hashtag "Bang Energy" has been viewed more than 17.8 ***billion*** times on TikTok.  Further, Ms. Owoc previously conceded that popular music is what drives traffic to Bang's TikTok videos:  "For me personally I engage way more with content that has my favorite music.  I doubt that the TikTok compilations videos will do as well ***because we are missing the popular music that gives the video the WOW factor***." (*Id.* ¶ 17 & Ex. 7 (emphasis added)).

Because Defendants destroyed the evidence that would have shown the number of times the Removed Videos were actually viewed, Defendants should not be permitted to argue for artificially low "reach" or Engagement Data.  Accordingly, the Court should impose an adverse inference regarding both infringement and the reach of the Removed Videos.

## CONCLUSION

The Court should impose an adverse inference that: (i) Defendants are liable to Plaintiffs for copyright infringement for each Identified Video; (ii) Defendants are liable to Plaintiffs for copyright infringement for each Additional Infringing Video; and (iii) the missing TikTok videos were viewed as many times as Plaintiffs' most popular videos on TikTok, *i.e.*, more than four million times each.  Plaintiffs further respectfully request that the Court grant them their reasonable attorneys' fees and costs incurred in bringing this motion and grant such other and further relief as the Court deems just and proper.[11]

---

[11] Plaintiffs reserve the right to seek additional remedies under Rule 37 based on Defendants' continued rolling production of documents months after the Court-ordered deadline and after the close of briefing on the parties' dispositive motions.

## **REQUEST FOR EVIDENTIARY HEARING OR ORAL ARGUMENT**

In accordance with Local Rule 7.1(b)(2), Plaintiffs respectfully request that the Court hold an evidentiary hearing or oral argument on this motion in order to determine the basis for Defendants' failure to properly preserve the TikTok videos and whether a more severe sanction is appropriate. A one-hour hearing should suffice.

## **GOOD FAITH CONFERRAL**

Plaintiffs' counsel certifies that it conferred with counsel for Defendants, specifically Jill Ormond and Andrew Schindler, on May 24, 2022, before and during the hearing before Judge Becerra. Further, Plaintiffs alerted Defendants as to their intention to file a motion for spoilation in Plaintiffs' May 13, 2022 opposition to Defendants' cross-motion for summary judgment. (*See* D.E. 97). Defendants oppose the relief sought.

Dated:  June 14, 2022

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (786) 582-3010
Facsimile:  (786) 582-3004


*s/ James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
Brendan S. Everman
Florida Bar No. 68702
Tyler J. Rauh
Florida Bar No. 1023404
jsammataro@pryorcashman.com
beverman@pryorcashman.com
trauh@pryorcashman.com
ksuarez@pryorcashman.com
*Attorneys for Plaintiffs*